# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IVORY BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09-CV-1802 CAS |
| ) | |
| APPLIED SWEEPERS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendant Applied Sweepers, Ltd.'s motion to dismiss for plaintiff's failure to comply with Federal Rule of Civil Procedure 26 and the Case Management Order entered in this case. Plaintiff did not respond to this motion, and the time to do so has expired. Also pending before the Court is defendant Applied Sweepers, Ltd.'s motion for summary judgment. Plaintiff opposes the summary judgment motion, which is fully briefed and ready for disposition. For the following reasons, the Court will deny defendant's motions to dismiss and for summary judgment.

## **I. Procedural History**

This is a products liability action. In his complaint,[1] plaintiff Ivory Bryant alleges that on or about August 5, 2005, while employed by Downtown St. Louis, he was operating a street and sidewalk sweeping device know as the "Green Machine," model 424, which was manufactured and

---

[1]This is the second suit plaintiff has filed against defendant Applied Sweepers, Ltd. based on the same claims. Plaintiff's original suit, Bryant v. Applied Sweepers, Ltd., et al., 4:07-CV-1403 CDP, was filed on August 6, 2007, and assigned to the Honorable Catherine D. Perry. After the expiration of the expert disclosure deadline, plaintiff moved to voluntarily dismiss that case, over defendant's objections, and the motion was granted.

distributed by defendant Applied Sweepers, Ltd. ("Applied Sweepers").  Plaintiff alleges that while operating the Green Machine, the sweeper encountered the uneven surface of a sidewalk ramp and "bottomed out."  Plaintiff alleges that as a result of hitting the uneven surface of the ramp, the machine "kicked back," injuring his right arm and shoulder.  Plaintiff alleges that as a result he has suffered permanent, progressive and painful injuries, including a rotator cuff tear, which required surgical treatment.  Plaintiff also makes a claim for lost wages.

Plaintiff has bought two counts against defendant Applied Sweepers.[2]  In Count I, entitled "Products Liability," plaintiff alleges defendant Applied Sweepers manufactured and placed into the stream of commerce a defective street and sidewalk sweeper that did not carry the proper warnings.  More specifically, plaintiff alleges: (1) that the vacuum intake system of the machine is too low, cannot be adjusted, and hits obstructions causing the machine to bounce back at the operator; (2) that the vacuuming head portion of the machine should have been designed to move up and down on a flexible housing; (3) that there was no warning placed on the machine or in the instruction booklet that contact with an obstruction can cause the machine to bounce back and cause injuries, and (4) that the machine does not have an appropriate sensor or cut-off switch to automatically disengage the drive system when the vacuum head encounters an obstruction.

In Count II, entitled "Negligence," plaintiff alleges that defendant Applied Sweepers was negligent in that (1) it failed to warn purchasers and users of the damages of low vacuuming setting, which causes kick-back when it hits an obstructions; (2) it failed to warn purchasers or users that

---

[2]Plaintiff also named Applied Sweepers, Inc. and Eco-Systems, Inc. as defendants in the complaint.  Applied Sweepers, Inc. was dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for plaintiff's failure to serve this defendant.  Eco-Systems, Inc. was dismissed on a Rule 12(b)(6) motion to dismiss for failure to state a claim.

there was no safety cut-off in the event the machine was obstructed; (3) it failed to include an automatic height adjuster for the vacuum system to avoid obstructions; (4) it failed to warn or advise that users must sit on the machine to avoid injury due to kick-back; and (5) it failed to provide any written warning whatsoever as to the dangers of potential kick-back of the machine.[3]

Under the terms of the original Case Management Order ("CMO") entered in this case, plaintiff was to disclose his expert witnesses on or before December 15, 2010. The experts were to be deposed no later than February 1, 2011. The expert disclosure deadlines passed, and plaintiff did not disclose any experts. Additionally, under the terms of the CMO, plaintiff was to make disclosures pursuant to Rule 26(a)(1) no later than October 12, 2010. Plaintiff did not make his Rule 26(a)(1) disclosures until June 2011. Plaintiff did, however, make Rule 26(a)(1) disclosures in his previously filed case, Bryant v. Applied Sweepers, Ltd., et al., 4:07-CV-1403 CDP, and he maintains the disclosures in this case are the same, which defendant does not dispute.

On January 18, 2011, defendant filed a motion to dismiss on the grounds that plaintiff failed to comply with Rule 26 and the CMO in that he did not disclose any expert witnesses. In its motion, defendant argues Missouri law requires expert testimony in a products liability action involving complex subject matter such as the Green Machine, and that experts are required in order for plaintiff to prove his case. Without citing to any applicable authority, defendant also argues that the case should be dismissed because plaintiff failed to make his Rule 26(a)(1) disclosures. Plaintiff did not respond to defendant's motion to dismiss.

---

[3]Plaintiff also alleges that defendants "failed to maintain or repair the product to keep said product in a reasonably safe condition for its intended use." See Doc. 1 at 6. This claims appears to have been aimed at Eco-Systems, Inc., which serviced the sweepers for Downtown St. Louis.

3

On May 12, 2011, defendant filed a motion for summary judgment, in which it argues plaintiff cannot prove his products liability claims because he failed to disclose any expert witnesses. In its motion, defendant argues that there is no genuine issue of material fact for a jury to decide because there is a complete lack of proof concerning the defective condition of the sweeper at issue. Plaintiff again did not respond to the merits of defendant's motion for summary judgment, but rather on June 22, 2001, filed a motion asking that the Court reset and extend the expert disclosure deadlines. Finding plaintiff failed to show good cause for modifying the CMO and that plaintiff's lateness in disclosing experts was neither justified nor harmless, the Court denied plaintiff's motion to amend the CMO and reset the expert disclosure deadlines. In its Memorandum and Order denying plaintiff's motion, the Court ordered plaintiff to respond to the merits of defendant's motion for summary judgment, which plaintiff did. Plaintiff responds that he can prove his products liability and negligence claims without expert testimony because neither the sweeper at issue nor the alleged defects are so complex that the aid of an expert is needed. Defendant has since filed a reply memorandum.

## II. Summary Judgment Standard

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).

Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 quoting Anderson, 477 U.S. at 248. A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

5

## III. Discussion

### A. Strict Liability - Defective Design

Under Missouri law, to prove a claim of strict products liability for defective design, a plaintiff must prove that "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of the defective condition that existed when the product was sold." Engel v. Corrigan Company-Mechanical Contractors, Inc., 148 S.W.3d 28, 30 (Mo. Ct. App. 2004) (citation omitted). See also Mo. Rev. Stat. § 537.761; Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 375 (Mo. 1986) (en banc) ("[T]he primary inquiry in a design defect case is whether the product-because of the way it is designed-creates an unreasonable risk of danger to the consumer or user when put to normal use.").

In its motion, defendant does not challenge the first, third, or fourth elements of the claim. Defendant argues plaintiff's products liability claim fails because he cannot prove, under the second element, that the Green Machine was "unreasonably dangerous" without the testimony of an expert. Plaintiff counters that the Green Machine and the alleged defect are not so complex that expert testimony is needed.

In the Court's view, Sappington v. Skyjack, Inc., 512 F.3d 440 (8th Cir. 2008), is controlling in this case. In Sappington, the Eighth Circuit specifically addressed when a products liability claim can go forward under Missouri law without the testimony of an expert. The Sappington case involved an accident on a scissors lift. Id. at 443. At the time of the accident, the decedent, a carpenter working on the construction of a parking garage, was up approximately twenty-six feet in

the air. Id. He was operating the lift on a smooth concrete surface at a very slight angle. Id. The accident occurred when the decedent drove the lift in reverse and the rear wheels dropped off the concrete floor into a hole. Id. The wheels dropped off the edge, the lift became unstable and tipped over, and the carpenter fell to the concrete and later died. Id.

The plaintiffs, who were relatives of the decedent, brought a strict liability claim under Missouri law against, among others, the manufacturer of the scissors lift. 512 F.3d at 444. The plaintiffs alleged that the lift was defective and unreasonably dangerous because it was not sufficiently stable to remain upright when its wheels dropped into the hole. Id. It was plaintiffs' contention that the lift should have been manufactured with pothole protection, which was a safety feature available on later models of the lift. Pothole protection is not a simple matter. As the Eighth Circuit explained, "[p]othole protection . . . refers specifically to a system of drop-down stabilizing bars located at the bottom sides of the lift platform, which, when deployed, reduce the lift's ground clearance." Id. at 443. Plaintiffs argued the pothole protection technology was available and feasible when the subject lift was manufactured, and that it would have prevented the tip-over accident. Id. at 444.

The district court excluded plaintiffs' two experts and found plaintiffs could not prove that the lift was defective and unreasonably dangerous without expert opinion testimony. 512 F.3d at 445. It dismissed the case on summary judgment. Id. The plaintiffs appealed both the exclusion of the experts and the summary judgment decision. Id. The Eight Circuit reversed on all grounds. Id.

In its decision, the Eighth Circuit first addressed the issue of summary judgment and whether the plaintiffs could have gone forward with their products liability claims without expert testimony.

7

In its analysis, the Sappington Court noted that under Missouri law "the concept of 'unreasonable danger' is to be treated as an ultimate issue for the jury." Id. at 446 (citing to Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47, 65 (Mo. 1999) (en banc)) (emphasis added). According to the Eighth Circuit, "Missouri courts have consistently refused to impose any 'judicial definition [of unreasonably dangerous] whether derived from consumer expectations, risk-utility, or otherwise.' Instead, juries 'give the concept of unreasonable danger content by applying their collective intelligence and experience to the broad evidentiary spectrum of facts and circumstances presented by the parties.'" Id. (citing Thompson v. Brown & Williamson Tobacco Corp., 207 S.W.3d 76, 90 (Mo. Ct. App. 2006)) (internal citations omitted). The Eight Circuit further stated that the parties are "entitled to assist the jury in defining the term 'unreasonably dangerous' by presenting evidence that the utility of a design outweighs its risks, or that consumer expectations were violated, or any other theory of unreasonable dangerousness supported by the evidence." Id. (citations and quotations omitted). "Such evidence, however, is not required and a plaintiff is not, for example, 'required to prove the existence of a reasonable alternative design in order to make a submissible case.'" Id. In the case, the Eighth Circuit made clear that under Missouri law "the existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness.'" Id. (citing Stinson v. E.I. DuPont De Nemours & Co., 904 S.W.2d 428, 431 (Mo. Ct. App. 1995); Klein v. General Elec. Co., 714 S.W.2d 896, 900 (Mo. Ct. App. 1986)) (emphasis added).

Applying the law to the facts of the Sappington case, the Eighth Circuit found that the plaintiffs' proffered evidence of unreasonable dangerousness – that the lift tipped over when it hit a common workplace hazard and that the technology existed to manufacture a more stable lift, including a lift that would not have turned over under the conditions of the accident – did not require

8

the testimony of an expert. 512 F.3d at 448 ("[t]his evidence does not require the testimony of experts"). The Eighth Circuit concluded that the lower court had improperly granted summary judgment.

After examining the record[4] before it, this Court concludes, applying the law of Sappington, that the Court cannot grant summary judgment as to plaintiff's claim of strict liability based on design defect. Here, there is evidence to support plaintiff's claim that he was injured when the machine he was using at work, the Green Machine, encountered a common workplace hazard, uneven concrete. There is evidence that at the time of the accident the Green Machine was being put to a reasonably anticipated use, and had not been altered in any way. Plaintiff has also offered evidence to show that there exists technology that would prevented the kick-back which caused his injury. He points to technology that was available on other models that were manufactured at the same time, and safer methods of operating the sweeper, such as always using the optional attached seat, as opposed to walking behind the machine. The Court finds, like the evidence in Sappington, that this evidence does not require the testimony of experts. Id. at 448.

In its briefs, defendant makes much ado of the fact that the Green Machine is not a personal vehicle which the average lay juror has operated in his or her lifetime. The Court would note that the average juror has also not operated a scissors lift, which is a fairly complicated piece of machinery. The test is not whether the juror may have operated the product at issue, or even how complex the machine might be. The issue is whether jury, without the aid of an expert, can apply "their collective intelligence and experience to the broad evidentiary spectrum of facts and

---

[4]The Court does agree with defendant that the unsigned statement from Albert Hyde is inadmissible under the Federal Rules of Evidence. The Court did not consider the statement in making its decision.

circumstances," Thompson, 207 S.W.3d at 90, "to determine whether the product-because of the way it is designed-creates an unreasonable risk of danger to the consumer or user when put to normal use." Nesselrode, 707 S.W.2d at 375. If the Eighth Circuit is confident that a jury does not need the assistance of an expert to evaluate a scissors lift and pothole protection technology, the undersigned feels compelled to find that a jury does not need the assistance of an expert to evaluate the ground clearance of the Green Machine and a proposed suspension system, cut-off switch, and/or attached seat, which were available on this or other models.

Based on the record before it, the Court cannot conclude, under the controlling law of Sappington, that "there is no conceivable way for plaintiff[] to convince a jury the [Green Machine] was unreasonably dangerous." 512 F.3d at 448. Accordingly, defendant's motion for summary judgment as to plaintiff's claim of strict liability for defective design is denied.

    **B.    Strict Liability - Failure to Warn**

Under Missouri law, a manufacturer has a duty to warn users when its product is inherently dangerous. Duke v. Gulf & W. Mfg. Co., 660 S.W.2d 404, 418 (Mo. Ct. App. 1983). The absence of an adequate warning, in itself, renders a product defective or unreasonably dangerous under products liability law. Id. To prevail on a strict liability claim of failure to warn, the plaintiff must prove (1) the defendant sold the product in its course of business, (2) the product was unreasonably dangerous at the time of sale, when used as reasonably anticipated, without knowledge of its characteristics, (3) the defendant failed to adequately warn of the danger, (4) the product was used in a manner reasonably anticipated, and (5) plaintiff was damaged as a direct result of the manufacturer selling the product without a warning. Mouser v. Caterpillar, Inc., 2000 WL 35552637, at *12 (E.D. Mo. Oct. 6, 2000). As part of the causation requirement, the plaintiff must

show that his injuries were caused by the product at issue, and that a warning would have altered his behavior. Anderson v. F.J. Little Machine Co., 68 F.3d 1113, 1115 (8th Cir. 1995).

In its motion for summary judgment, defendant argues it is entitled to summary judgment as to plaintiff's products liability for failure to warn claim because plaintiff cannot prove, without the aid of an expert, that the Green Machine is unreasonably dangerous, the second element of plaintiff's claim. As stated above, the Court disagrees with defendant's argument. Reviewing the evidence in the record, the Court finds there is evidence from which a jury could find that although it was being used in a reasonably anticipated manner, the Green Machine was unreasonably dangerous and Applied Sweepers failed to adequately warn of the danger. There is also no indication that plaintiff was aware of the specific danger related to operating the Green Machine over uneven surfaces. See Duke, 660 S.W.2d at 419 (finding that plaintiff's testimony he never knew "not [to] use the press without guards" indicated he was not aware of the specific danger at issue). And plaintiff is entitled to the presumption that "he would have heeded a warning had it been given." Cole v. Goodyear Tire & Rubber Co., 967 S.W.2d 176, 185 (Mo. Ct. App. 1998). Thus, defendant's motion for summary judgment as to plaintiff's claim of strict liability for failure to warn is denied.

### C. Negligence

To recover under a negligence theory, a plaintiff is required to prove "that the defendant had a duty to protect him from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused his injury." Strong v. American Cyanamid Co., 261 S.W.3d 493, 506 (Mo. Ct. App. 2007) (citation omitted). "[T]he manufacturer of a product which is potentially dangerous when used in its intended fashion, or reasonably certain to place life and limb in peril when negligently constructed, is under a duty to the user to exercise ordinary care in its manufacture,

11

and is liable to a user injured thereby if the injury results from a latent defect bespeaking lack of ordinary care in producing the product." Morrison v. Kubota Tractor Corp., 891 S.W.2d 422, 426 (Mo. Ct. App. 1994). Further, "while the manufacturer could be held liable if the defect or danger was latent or concealed, it was not liable 'where the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger.'" Id. (quoting Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343, 347 (Mo. 1964)). A defect is not latent where it would have been discoverable through the exercise of due care or reasonable diligence. Id. at 426-27 (internal quotations and citation omitted).

Again, defendant argues it is entitled to summary judgment on plaintiff's claim of negligence because plaintiff does not have an expert who will testify as to the dangerousness of the Green Machine. The Court finds, under the record in this case, that an expert is not necessary. Plaintiff alleges that his injuries were a result of Applied Sweepers' negligent design of the Green Machine's clearance and its failure to provide any warning that the Green Machine had the potential to kick-back when it encounters an obstruction such as an uneven surface. The Court finds the alleged hazard was not open and obvious or plainly visible. Therefore, the Court finds summary judgment is not warranted as to plaintiff's negligence claims.

### IV. Motion to Dismiss

In addition to its motion for summary judgment, defendant also moves to dismiss this case for plaintiff's failure to comply with Federal Rule of Civil Procedure 26 and the terms of the CMO entered in this case. More specifically, defendant argues plaintiff's claims should be dismissed because plaintiff did not follow Rule 26 or the CMO and disclose experts, and he did not make his Rule 26(a)(1) initial disclosures in a timely manner.

12

The disclosures of experts is not mandatory and, as discussed above, plaintiff may present his claims to the jury without the aid of an expert. As for the Rule 26(a)(1) initial disclosures, defendant has not provided with Court with the authority under which it may dismiss this case for plaintiff's failure to timely make Rule 26 (a)(1) initial disclosures. What is more, defendant did not file a Rule 37 motion to compel initial disclosures in the time provided for under the CMO; plaintiff has since provided defendant with his Rule 26 (a)(1) initial disclosures, which were the same as those provided in the previously-filed case; and defendant has not explained how it has been harmed or prejudiced by the late disclosures. Defendant's motion to dismiss for plaintiff's failure to disclose experts and timely make Rule 26(a)(1) initial disclosures is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Applied Sweepers, Ltd.'s motion for summary judgment is **DENIED**. [Doc. 36]

**IT IS FURTHER ORDERED** that defendant Applied Sweepers, Ltd.'s motion to dismiss is **DENIED**. [Doc. 27]

                                              **CHARLES A. SHAW**
                                              **UNITED STATES DISTRICT JUDGE**

Dated this \_\_10th\_\_ day of August, 2011.